UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURIE LINDSEY,

    Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION,

    Defendant.

Case No. 15-cv-03006-WHO

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 33

## INTRODUCTION

Plaintiff Laurie Lindsey brings this hostile work environment action against defendant Costco Wholesale Corporation ("Costco"), asserting claims for harassment and failure to prevent harassment under California's Fair Employment and Housing Act ("FEHA"), and for negligent hiring, supervision, and retention. Her claims are based on the actions of her supervisor, Juan Aguilera, who she alleges subjected her to a course of verbal harassment based on her sex and sexual orientation between 2008 and 2014, culminating in an incident on August 9, 2014 in which Aguilera walked up to her and "slammed" into her right side with his right arm and shoulder. Costco moves for summary judgment on each of Lindsey's three causes of action, and on her request for punitive damages. For the reasons discussed below, the motion is GRANTED with respect to Lindsey's request for punitive damages but DENIED with respect to her three causes of action.

## BACKGROUND

### I.   FACTUAL BACKGROUND

Lindsey describes herself as a 31-year-old gay woman who projects a "butch, masculine appearance." Lindsey Decl. ¶ 2 (Dkt. No. 44-8); *see also* Oppo. at 1 (Dkt. No. 44). She began working for Costco in 2003. Lindsey Depo. at 145 (Dkt. No. 35-3). In 2006, she transferred to

the San Francisco Warehouse, where she became a cashier. *Id.* at 97, 145. Aguilera was Lindsey's supervisor at the San Francisco Warehouse. *See* Lindsey Decl. ¶ 2. Lindsey accuses Aguilera of "a long, sustained pattern of severe and pervasive harassment and inappropriate conduct directed at [her]," beginning in 2008 and continuing into 2014. Oppo. at 2. Her claims center on seven different incidents or patterns of conduct involving Aguilera.

First, at some point in 2008, Aguilera approached Lindsey while she was standing at a cash register and stated, "You're chopped liver and she's filet mignon," referring to another female employee standing nearby. Lindsey Depo. at 170, 172. Lindsey reported the incident to Warehouse General Manager Mike Reike, who suspended Aguilera and issued him a disciplinary counseling notice. *Id.* at 173-76; Aguilera Decl. ¶ 4 (Dkt. No. 34); Aguilera Depo. at 49-50 (Dkt. No. 35-7).[1]

Second, Lindsey asserts that

> [s]tarting around 2008, [Mr. Aguilera] began a sustained habit of referring to me as "sir" when he would interact with me at work. I never saw or overheard Mr. Aguilera referring to other female

---

[1] In April 2010, Lindsey and a number of other Costco employees sent a letter to Costco's CEO stating that that they "would like to discuss some of the issues [they] have with the management at [the San Francisco Warehouse]," and requesting that Costco representatives be sent to the Warehouse to "interview as many employees as possible." Jolivet Decl. Ex. 11 (Dkt. No. 44-3). The issues identified in the letter include "Sexual Harassment," "Shut Down of Open Door Policy," "Intimidation Tactics," and "Retaliation," as well as a number of other issues having nothing to do with Lindsey's claims. *Id.* At a follow-up interview with Human Resources employee Sarah Rajski, Lindsey did not identify Aguilera by name but described the "chopped liver" comment and

> expressed that one of my male supervisors had made the comment. I also expressed that Costco's handling of that complaint had only angered my supervisor, and that I was afraid that if I brought further complaints to Costco's attention, the information would make its way back to the harasser and my coworkers. I also discussed that after making my complaint, my supervisor had thrown it back in my face, treating my complaint like it was a joke and advising others to "watch what they say" around me. This made me extremely uncomfortable to come to work on a daily basis. I explained to Ms. Rajski that I did not want to go through more hassle and retaliation if I complained about my supervisor's additional remarks, and that if I complained too much it would raise a red flag such that people would not want to deal with me. I stopped raising the complaints as a result.

Lindsey Decl. ¶ 6; *see also* Jolivet Decl. Ex. 34 at D001142 (Rajski's notes from the conversation).

> employees or members as "sir." I perceived these comments to be motivated by my butch, masculine appearance. These comments were derogatory and unwelcome. While I can't say with precision whether Mr. Aguilera made these comments in every year, or made them with equal frequency in each year, overall he made them regularly throughout my employment with Costco, starting in 2008.

Lindsey Decl. ¶ 2. At her deposition, Lindsey stated that Aguilera made the "sir" comments "intermittently" and described the comments as follows:

> Q: . . . In what context would he refer to you as "sir"?
>
> A: Supervisors often walk between registers counting drops and if they were called, they would be kind of walking around the front end at a fast pace so sometimes if he had to count my drop or had to converse with me, . . . it would be, like, a quick verbal utterance of acknowledgment instead of saying my name.
>
> [ . . . ]
>
> Q: Would he just come by you and say, "Hi, sir"?
>
> A: Something to that effect.

Lindsey Depo. at 179-80.

> Third, Lindsey asserts that
>
> [i]n 2008, Aguilera . . . began a pattern of pointing out other women to me in the warehouse that he found physically attractive, commenting "look at that" or "look at her." To my knowledge, Mr. Aguilera did not make these comments to other female coworkers. These comments were sexual and unwelcome as well. Although Mr. Aguilera did not expressly state that he was aware that I was (and am) gay, I believe his comments and conduct demonstrated that he was aware of my sexual orientation because he did not make similar comments to other female employees. I perceived that he was pointing out these women to me so that I would agree with him, based on his awareness of my sexual orientation. While I can't say with precision whether Mr. Aguilera made these comments in every year, or made them with equal frequency in each year, overall he made them regularly throughout my employment with Costco, starting in 2008 until my reassignment to member services following the August 2014 assault.

Lindsey Decl. ¶ 3; *see also* Lindsey Depo. at 181-82. Lindsey stated at her deposition that she could not recall whether she asked Aguilera to stop making the comments, and that she did not report the comments to any other supervisor. *Id.* She testified that she did not report the comments because she "sensed hostility" from Aguilera and was "afraid of more retaliation."[2] *Id.*

---

[2] Although Lindsey's opposition brief and associated materials occasionally refer to retaliation, her complaint does not include a retaliation claim.

3

at 182-83.  Asked to explain what retaliatory conduct she had experienced, Lindsey stated that in 2008 she "was at the supervisor's podium and [Aguilera] had walked up and there were other people around but I don't recall the names exactly, but he said, 'Watch what you say around her.'" *Id.* at 183.

Fourth, Lindsey asserts that

> [s]tarting in 2008 and continuing until my reassignment to member services in August 2014, Mr. Aguilera also frequently made farting noises with his mouth when I would bend over to pick something up. Based on all of his previous harassing and inappropriate comments, including his comparison of me to "chopped liver" and another female employee to "filet mignon," and his comments regarding other women he viewed as physically appealing, I perceived these farting noises to be a continuation of his harassment and expressions of his contempt for my sexual orientation.

Lindsey Decl. ¶ 4.  Lindsey testified that Aguilera made the farting noises at her "at least 50 times between 2008 and 2015."  Lindsey Depo. at 284.  She could not recall approximately how many times per year Aguilera made the noises.  *Id.* at 286.

Fifth, in March 2014, Lindsey

> was closing down a register area on the front end of the store at the request and under the supervision of Guy Wikium, a Costco Front-End Supervisor. In order to shut down the register, shopping carts are normally placed in the aisles so that members cannot walk through, and to direct members to other open registers and cashiers. As I was closing down the register area, Mr. Wikium asked me to place a spiral rope through the carts to keep them in place. At this point, Mr. Aguilera approached the end of the check-out area and said "gaps are meant to be filled." Prior to this comment, and throughout my entire time at Costco, I never heard any Costco employee or supervisor (including Mr. Aguilera) refer to the checkout lanes as "gaps"; rather, they were referred to as "lanes" or "aisles." His tone of voice and body language were sexually suggestive, and, I believe, were meant to convey his anti-homosexual views. I believe he directed the comment to me specifically because of my sexual orientation and to indicate his bias for heterosexual sexual intercourse. His comment was also sexist and biased against women in general, as it suggested that men are entitled or supposed to "fill" women's "gaps." Mr. Wikium rolled his eyes after hearing this comment, but did nothing to chastise or correct Mr. Aguilera's behavior.

Lindsey Decl. ¶ 8.  Lindsey did not report the incident to any other supervisor.  Lindsey Depo. at 231.

Sixth, around the same time as the "gaps are meant to be filled" comment, Aguilera made

4

1 another comment to Wikium:

> [Mr. Wikium] asked Mr. Aguilera if I was "together" with another female coworker. On the front end, cashier assistants are assigned to work with cashiers, and I was working as a cashier with a female cashier assistant. Mr. Aguilera suggestively replied "I don't know. They could be[,]" despite his responsibility as a Front-End Supervisor to know the cashier and cashier assistant assignments and to release us for breaks. This comment was directed at me, and his tone of voice was suggestive, almost a sneering manner, as if he was suggesting that my being assigned to work with another woman indicated that we were "together" romantically. His tone of voice and body language again were sexually suggestive and derogatory, and indicated not only his awareness of my sexual orientation, but his contempt for same.

Lindsey Decl. ¶ 9. Lindsey again did not report this incident to any other supervisor. Lindsey Depo. at 235.

Finally, Lindsey asserts that Aguilera physically assaulted her on Saturday, August 9, 2014 at approximately 2:00 p.m. She states that she was standing by the time clock near the optical department at the front of the warehouse when Aguilera "slammed his arm and shoulder into [her] arm and torso." Oppo. at 5-6. At her deposition, she described the incident as follows:

> He was walking towards my direction in a brisk manner, and he had a very stoic look on his face. And I was standing there. And as soon as he got closer to me, he hit me with the right side of his arm and his upper shoulder.
>
> [ . . . ]
>
> Q: Did he say anything at the point in time when he made contact with you?
>
> A. Yes.
>
> Q. What did he say?
>
> A. Immediately after, he said, "I have strong pecs. I'm strong." And he . . . went to the vault after he hit me. And when he turned, I was turning to clock in from lunch to go back in, to go to the podium. And he was basically gloating about hitting me and assaulting me.
>
> Q. What do you mean, he –
>
> A: About his strength in assaulting me.

Lindsey Depo. at 19-20. In her declaration, Lindsey further states that when Aguilera slammed into her, he

> gloated that he had just "pulled a Billy Wu move." I understood this

5

> to be a reference to a former Costco employee named Billy Wu who was terminated by Costco for assaulting a female member in a similar manner as Mr. Aguilera assaulted me – basically, for "checking" me with his shoulder, as a hockey player would "check" an opponent.

Lindsey Decl. ¶ 10.

Lindsey stated at her deposition that she did not fall down from the physical contact – although she "almost fell backwards" – and did not immediately feel any pain. Lindsey Depo. at 21-22, 296. She does not dispute that she went back to work and continued working until her shift ended at 6:20 p.m. Heuer Decl. ¶ 2, Ex. A (Dkt. No. 33-2). However, that evening she went to the emergency room reporting "tingling, pain, and numbness emitting throughout [her] right hand/arm" and soreness in her shoulder. Dkt. No. 44-3. The doctor she saw on that day, Dr. Peter Emblad, diagnosed her with a "left wrist muscle strain."[3] Fitch Decl. Ex. G at 44 of 44 (Dkt. No 35-9). On August 11, 2014, she saw an occupational physician, Dr. Stasia Muhlner, who diagnosed a "right wrist sprain," "right forearm contusion," and "right upper arm contusion." Jolivet Decl. Ex. 17 (Dkt. No. 44-3). Dr. Muhlner recommended "no repetitive gripping right hand, no lifting/pushing/pulling more than 5 lbs. right hand." *Id.*

Lindsey had a preexisting injury to her right wrist at the time of the August 9, 2014 incident. She testified that she suffered a "mild strain" to her right wrist while at work in December 2013 and received physical therapy for the injury on multiple occasions in January 2014. Lindsey Depo. at 31, 300-01. According to her written statement dated August 9, 2014 regarding the incident, she "ha[d] been dealing with the delicate nature of being susceptible to pain in [her] right arm/hand." Lindsey Depo. Ex. A (Dkt. No. 35-2). Lindsey testified that she did not inform Aguilera of this injury and that she did not know whether he was aware of it at the time of the incident. Lindsey Depo. at 33.

Keven Heuer, the Warehouse General Manager at the time, investigated the alleged assault by reviewing warehouse video capturing events before and after the physical contact (the physical contact itself was not captured on video) and by interviewing and obtaining statements from

---

[3] Neither party discusses why Dr. Emblad diagnosed a strain in Lindsey's left wrist as opposed to her right. It appears to be a typo by Dr. Emblad.

Lindsey, Aguilera, Michael Van Voorhis, who was the only other witness to the incident, and Karen Pazos. Heuer Depo. at 71-81 (Ex. D, Dkt. No. 35-6). Heuer testified that his investigation "corroborated more [Aguilera's] side of the story, that it was a minor bump, more like a hello," *id.* at 89, and that Aguilera was written up for "unbecoming conduct, horseplay," *id.* at 92. Since the incident, Aguilera has not spoken to Lindsey nor made physical contact with her. Lindsey Depo. at 63-64, 237-38.

Following the incident, Lindsey told Heuer that she did not feel comfortable working near Aguilera. Lindsey Depo. at 62. She states in her declaration that "whenever [Aguilera] was physically present near me I would experience physical symptoms of my internal anxiety in the form of panic attacks, including shortness of breath, elevated heart-rate, and tightness in my chest." Lindsey Decl. ¶ 11. Lindsey asked to work in the Member Service Department by the warehouse entrance. Lindsey Depo. at 93-94. Costco granted the request and continued to pay Aguilera at the cashier's higher rate of pay. *Id.* at 57-58.

On April 25, 2015, Lindsey submitted a request to be transferred to a different warehouse location. Ex. 54 (Dkt. No. 44-7). She identified the reason for the transfer request as, "I cannot work in the same building with an employee who assaulted (battery) and sexually harassed me. In addition, both my parents in [Southern California] have health issues." *Id.* Lindsey asserts in her opposition brief that when she submitted the transfer request to Heuer, he advised her "not to include the details of her harassment from Mr. Aguilera because it 'might make you look problematic.'" Oppo. at 9 (quoting Lindsey Depo. at 112). Lindsey also asserts in her opposition brief that she subsequently submitted an amended transfer request excluding the details of her harassment, but that Costco nevertheless denied the transfer, claiming that no positions were available. *Id.* Following this denial and another alleged incident of physical harassment by another of Lindsey's supervisors, Willie Eashman, "the stress of trying to avoid Mr. Aguilera on a daily basis became highly disruptive to [Lindsey's] mental health and overall well-being," and on June 2, 2015 she requested a leave of absence. Lindsey Decl. ¶ 12. Costco approved the request, and then approved an extension of the leave of absence until January 1, 2016. Lindsey Depo. at 119-20. On December 16, 2015, Lindsey resigned from her employment at Costco. *Id.* at 262-63.

7

## II. PROCEDURAL BACKGROUND

Lindsey filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") on November 20, 2014. Fitch Decl. Ex. G at LINDSEY000005 (Dkt. No. 35-9). The administrative complaint alleges that Costco "[d]enied [Lindsey] a work environment free of discrimination and/or retaliation" on account of her "Sex-Gender, Sex-Gender Identity or Gender Expression, Sexual Orientation." *Id.* A document titled "Additional Complaint Details" attached to the administrative complaint includes the following allegations:

> Lindsey has been harassed due to her sexual orientation and identification by her supervisor, Juan Aguilar. Among the long series of verbal attacks, insults, slurs, and mocking, Aguilar often makes comments regarding her physical appearance and sexual orientation. For example, Aguilar calls Lindsey "sir" and makes sexual and degrading comments about other female customers to her. Aguilar once told Lindsey "gaps are meant to be filled."

*Id.* at LINDSEY000006 (all references to "Aguilar" as in original).

Along with her administrative complaint, Lindsey requested an immediate right to sue notice, which she received on November 20, 2014. *Id.* at LINDSEY000003. She filed her civil complaint in the Superior Court of California, County of San Francisco on December 3, 2014, naming both Costco and Aguilera as defendants. Notice of Removal ¶¶ 1, 3 (Dkt. No. 1). Costco removed the case to federal court on June 29, 2015 after Lindsey dismissed Aguilera with prejudice on June 1, 2015. *Id.* ¶ 3.

Lindsey's complaint brings three causes of action against Costco: (1) harassment based on sex and sexual orientation in violation of FEHA; (2) failure to prevent harassment in violation of FEHA; and (3) negligent hiring, supervision and retention. Compl. ¶¶ 18-43 (Dkt. No. 1). Costo filed its motion for summary judgment on June 1, 2016. Dkt. No. 33 ("Mot."). I heard argument from the parties on June 6, 2016. Dkt. No. 47.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v.*

8

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material where it could affect the outcome of the case.  *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a factual issue remains for trial.  *Id.*  The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a factual dispute.  Fed. R. Civ. P. 56(c)(1)(A).  The nonmoving party need not show that the issue will be conclusively resolved in its favor.  *See Anderson*, 477 U.S. at 248-49.  All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial."  *Id.* (internal quotation marks omitted).  If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case."  *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party.  *Anderson*, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.*  However, conclusory and speculative testimony does not raise a genuine dispute of material fact and is insufficient to defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## DISCUSSION

### I. FIRST CAUSE OF ACTION: HARASSMENT BASED ON SEX AND SEXUAL ORIENTATION (FEHA)

FEHA makes it illegal "[f]or an employer . . . , because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual

9

orientation, or military and veteran status, to harass an employee." Cal. Govt. Code § 12940(j)(1).

The parties agree that Lindsey's first cause of action is a hostile work environment claim. *See* Mot. at 10; Oppo. at 14-15. The elements of a hostile work environment claim under FEHA are "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014); *accord Tenerelli v. Lockheed Martin Space Sys. Co.*, No. 15-cv-00012-BLF, 2016 WL 3072192, at *11 (N.D. Cal. May 20, 2016). FEHA makes an employer strictly liable for workplace harassment by a supervisor. *See State Dep't of Health Servs. v. Superior Court*, 31 Cal.4th 1026, 1042 (2003); *accord McKinzy v. Nat'l R.R. Passenger Corp.*, 836 F. Supp. 2d 1014, 1024 (N.D. Cal. 2011). Costco does not dispute that Aguilera was Lindsey's supervisor.

To the satisfy the "severe or pervasive" requirement of a hostile work environment claim, the working environment created by the harassment "must be both objectively and subjectively offensive." *Hughes v. Pair*, 46 Cal.4th 1035, 1044 (2009) (internal quotation marks omitted). "[A] plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail if a reasonable person considering all the circumstances . . . would not share the same perception." *Id.* (internal quotation marks and alterations omitted).

"The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 142 (2007) (internal quotation marks and alterations omitted). Conduct such as "[s]imple teasing" or "offhand comments" will not support a hostile work environment claim; nor will "isolated incidents" unless they are "extremely serious." *Id.* (internal quotation marks and alterations omitted); *see also Hughes*, 46 Cal.4th at 1043 ("[A]n employee seeking to prove sexual harassment based on no more than a few isolated incidents of harassing conduct must show that the conduct was severe in the extreme.") (internal quotation marks omitted). On the other hand, "a workplace may give rise to liability when it is permeated with discriminatory intimidation, ridicule, and insult." *Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 279 (2006) (internal quotation marks and

alterations omitted).

In determining what constitutes sufficiently pervasive harassment, courts have held that the harassing acts cannot be "occasional, isolated, [or] sporadic." *Mokler*, 157 Cal. App. 4th at 142 (internal quotation marks omitted); *accord Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336, 1347 (2011); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610 (1989). Rather, "the plaintiff must show a concerted pattern of harassment of a repeated, routine, or . . . generalized nature." *Mokler*, 157 Cal. App. 4th at 142.

Costco raises several arguments with respect to Lindsey's hostile work environment claim, including that (1) the claim is limited to harassment by Aguilera; (2) the claim is limited to harassment by Aguilera occurring within one year of November 20, 2014, the date Lindsey filed her administrative complaint; (3) Lindsey has not presented sufficient evidence showing that Aguilera's harassment was severe or pervasive; (4) Lindsey has not presented sufficient evidence showing that Aguilera's harassment was because of her sex or sexual orientation.

### A. Lindsey cannot bring claims based on harassment by individuals other than Aguilera.

In opposing Costco's motion for summary judgment, Lindsey points to several alleged incidents of harassment by Costco employees other than Aguilera. She asserts that Floor Manager Jack Rodriguez and Supervisor Rick Doll made sexually suggestive comments to her (Rodriguez on one occasion in 2010 and Doll on another occasion in 2015), and that in May 2015 supervisor Willie Eashman "ran into and physically pressed [her] against a wall in the entrance area, forcing her injured right arm and shoulder into a wall and imposing his substantially greater physical presence to intimidate [and] restrain her movement." Oppo. at 4, 7; *see also* Jolivet Decl. Ex. 37 (Dkt. No. 44-5).

Lindsey cannot rely on these allegations to support her hostile work environment claim. "A prerequisite to bringing a civil action under FEHA is the filing of an administrative complaint with DFEH no later than one year after the violation occurred." *Dominguez v. Washington Mut. Bank*, 168 Cal. App. 4th 714, 720 (2008). "The scope of the [administrative complaint] limits the scope of the subsequent civil action." *Henry v. Regents of the Univ. of California*, 37 F. Supp. 3d

11

1067, 1078 (N.D. Cal. 2014). Thus, incidents not described in the administrative complaint can only be included in the civil lawsuit "if they would necessarily have been discovered by investigation of the charged incidents, i.e., if the allegations in the civil complaint were 'like or related' to those specified in the [administrative complaint]." *Soldinger v. Nw. Airlines, Inc.*, 51 Cal. App. 4th 345, 381 (1996).

Lindsey's allegations regarding Rodriguez, Doll, and Eashman would not necessarily have been discovered by investigation of the charged incidents included in her administrative complaint. That administrative complaint identifies "Juan Aguilar" as Lindsey's sole harasser and focuses specifically on the "sir" and "gaps are meant to be filled" comments. *See* Fitch Decl. Ex. G at LINDSEY000005-06. It includes no information regarding harassment by other individuals, and gives no indication that the alleged harassment involved anyone other than Aguilera. *See Henry*, 37 F. Supp. 3d at 1082 (limiting hostile work environment claim to allegations regarding one individual where the plaintiff's administrative charges were "directed specifically at [that individual]"). In addition, the alleged incidents involving Doll and Eashman occurred in 2015, after Lindsey had filed her administrative complaint and the DFEH had issued Lindsey's right-to-sue letter on November 20, 2014. *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 645 (9th Cir. 2003) ("As for [the] threat to transfer [plaintiff], that event occurred several months after the alleged harassment and even after the EEOC had issued its right-to-sue letter. The EEOC could not have investigated that incident because it had not yet happened at the time the EEOC was conducting its investigation."); *Koel v. Ashcroft*, No. 03-cv-05119-EDL, 2004 WL 2223069, at *3 (N.D. Cal. Oct. 1, 2004) ("An investigation into plaintiff's prior complaints of discrimination and retaliation would not have revealed the thirty-day suspension because it had not happened yet, so a claim of retaliation or discrimination based on the thirty-day suspension could not have grown out of the earlier charges.").

Further, even assuming that the alleged incidents involving Rodriguez, Doll, and Eashman fall within the scope of Lindsey's administrative complaint, Lindsey subsequently abandoned these theories of liability by failing to plead them in this lawsuit. Like her administrative complaint, her civil complaint is focused exclusively on alleged harassment by Aguilera, does not

1   mention Rodriguez, Doll, or Eashman, and gives no indication that Lindsey was harassed by
2   anyone other than Aguilera. *See* Compl. ¶¶ 10-17. A party may not "effectively amend its
3   [c]omplaint by raising a new theory . . . in its response to a motion for summary judgment." *La*
4   *Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir.
5   2010); *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur
6   precedents make clear that where, as here, the complaint does not include the necessary factual
7   allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to
8   present the claim to the district court.").

9   Lindsey offers no explanation of why the alleged incidents involving Rodriguez, Doll, and
10  Eashman are properly incorporated into this case. To the contrary, she appears to concede that this
11  case is limited to alleged harassment by Aguilera – in arguing that she has made a sufficient
12  showing of severe or pervasive harassment, she discusses only Aguilera and says nothing about
13  Rodrigues, Doll, or Eashman. *See* Oppo. at 14-17. Lindsey cannot bring claims based on
14  harassment by individuals other than Aguilera.

### B. Costco is not entitled to summary judgment on Lindsey's hostile work environment claim.

Costco's other arguments regarding Lindsey's hostile work environment claim concern whether under FEHA's statute of limitations her claim is limited to harassment occurring within one year of November 20, 2014, and whether she has presented sufficient evidence showing that Aguilera's harassment was either (1) severe or pervasive, or (2) because of her sex or sexual orientation.

These arguments highlight weak points in Lindsey's claim, but they do not entitle Costco to summary judgment. The evidence of record is sufficient to create a triable issue on application of the continuing violation doctrine. Contrary to Costco's assertions, *see* Reply at 3-5, 14-15, Lindsey's statements in her declaration regarding the timing and frequency of Aguilera's conduct are not so inconsistent with her deposition testimony as to justify application of the sham affidavit rule. *See Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (stating that the sham affidavit rule does not preclude a party from "elaborating upon, explaining or clarifying prior

testimony elicited by opposing counsel on deposition," and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence" do not justify striking a declaration). Nor are they insufficient as a matter of law to support an inference that Aguilera's harassing conduct occurred with reasonable frequency during the relevant time period. *See Harris v. City of Fresno*, 625 F. Supp. 2d 983, 1024 (E.D. Cal. 2009) (finding a triable issue on application of the continuing violation doctrine based on plaintiff's specific identification of several racist comments, "[c]oupled with [his] state[ment] in his declaration that he has been subject to racist comments throughout his employment and they continue to persist"); *cf. Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998) (Title VII plaintiff's "statement during her deposition that [her harasser's] conduct persisted for most of her term of employment . . . is, viewed properly, evidence that supports her allegation that she continued to endure sexual harassment" into the limitations period).

The evidence of record is also sufficient to create a triable issue on whether Aguilera's harassment was (1) severe or pervasive and (2) because of Lindsey's sex or sexual orientation. Lindsey has presented evidence indicating that Aguilera, her supervisor throughout the relevant time period, made regular harassing comments to her over the course of seven years, culminating in the alleged assault on August 9, 2014. Making all reasonable factual inferences in Lindsey's favor, and taking into consideration Aguilera's status as her supervisor, this fact pattern is sufficient for a jury to decide whether Aguilera's conduct amounted to illegal harassment under FEHA.[4] *See Dee v. Vintage Petroleum, Inc.*, 106 Cal. App. 4th 30, 36-37 (2003) (highlighting alleged harasser's status as plaintiff's supervisor in reversing grant of summary judgment for defendant; stating that while "in many cases, a single offensive act by a coemployee is not enough

---

[4] Likewise, the extent to which the avoidable consequences doctrine shields Costco from damages presents a fact question for the jury. *See State Dep't*, 31 Cal.4th at 1044 ("[The avoidable consequences] defense will allow the employer to escape liability for those damages, and only those damages, that the employee more likely than not could have prevented with reasonable effort and without undue risk, expense, or humiliation, by taking advantage of the employer's internal complaint procedures appropriately designed to prevent and eliminate sexual harassment. Deciding when a harassed employee has first suffered compensable harm and when a reasonable employee would have reported the harassment will in many and perhaps most instances present disputed factual issues to be resolved by application of practical knowledge and experience.").

1   to establish employer liability for a hostile work environment[,] . . . where that act is committed by
2   a supervisor, the result may be different"); *Harris*, 625 F. Supp. 2d at 1020 ("The supervisory
3   status of [plaintiff's alleged harassers], both non-African-Americans, enhances the severity of their
4   racial statements."). Costco's motion for summary judgment on Lindsey's first cause of action is
5   DENIED.

## II.  SECOND CAUSE OF ACTION: FAILURE TO PREVENT HARASSMENT (FEHA)

FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Govt. Code § 12940(k). "When a plaintiff seeks to recover damages based on a claim of failure to prevent discrimination or harassment, she must show three essential elements: (1) [she] was subjected to discrimination, harassment or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) this failure caused [her] to suffer injury." *Lelaind v. City & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008); *accord Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 913 (N.D. Cal. 2015); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015). Courts have read section 12940(k) to create a tort requiring the usual elements of (1) breach of a duty of care by a "negligent act or omission," (2) causation, and (3) damages. *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 286-87 (1998); *accord Ambrosini v. Universal Cable Holdings, Inc.*, No. 14-cv-00896-RS, 2014 WL 3362244, at *3, *3 n.5 (N.D. Cal. July 7, 2014); *Ortega v. Univ. of Pac.*, No. 13-cv-01426, 2013 WL 6054447, at *3 (E.D. Cal. Nov. 15, 2013); *Houston v. Regents of Univ. of California*, No. 04-cv-04443-PJH, 2006 WL 1141238, at *27 (N.D. Cal. May 1, 2006). Reasonable steps that employers may be required to take to prevent discrimination from occurring include "prompt investigation" of discrimination claims, "the establishment and promulgation of antidiscrimination policies," and "the implementation of effective procedures to handle complaints and grievances regarding discrimination." *California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024-25 (2004).

Costco's principal argument with respect to Lindsey's failure to prevent claim is that it fails along with the underlying harassment claim. Mot. at 18-19. In light of the ruling on the

underlying harassment claim, this argument is meritless. Costco also notes that Lindsey did not report Aguilera's harassment to management except for the "chopped liver" comment in 2008 and the alleged assault in 2014, after which Aguilera ceased all contact with her. *Id.* However, Lindsey asserts that at least two of Aguilera's other harassing comments were made in front of Wikium, another Costco supervisor. Lindsey Decl. ¶¶ 8-9. She also claims that she did not report more of Aguilera's behavior because she was worried about retaliation based on Aguilera's comment, made in the presence of other Costco employees, that people should "[w]atch what [they] say around [Lindsey]." Lindsey Depo. at 183. Lindsey's concerns about retaliation and other inadequacies in Costco's approach to harassment complaints are also reflected in her conversation in 2010 with Human Resources employee Rajski. *See* Lindsey Decl. ¶ 6; Jolivet Decl. Ex. 34 at D001142. Viewed in the light most favorable to Lindsey, the record is sufficient to create a triable issue on whether Costco acted negligently with respect to Aguilera's continuing harassment of Lindsey. Costco's motion for summary judgment on Lindsey's second cause of action is DENIED.

### III. THIRD CAUSE OF ACTION: NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Costco argues that Lindsey's negligent hiring, supervision, and retention claim is barred by California's Workers' Compensation Act ("WCA"). Mot. at 19-22. A number of courts in this circuit have rejected this argument. *See Scott v. Solano Cty. Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 971 (E.D. Cal. 2006) (harassment and discrimination are "not a normal risk of the compensation bargain" and therefore are not precluded by the WCA); *see also Evenfe v. Esalen Inst.*, No. 15-cv-05457-LHK, 2016 WL 3965167, at *8 (N.D. Cal. July 24, 2016) (noting that "when employers subject their employees to racial discrimination or sexual harassment, . . . such [conduct] falls outside the workers' compensation exclusivity because [it is] not considered a normal risk of the compensation bargain"); *Jefferson v. Kellogg Sales Co.*, No. 08-cv-04132-SI, 2008 WL 4862511, at *3-4 (N.D. Cal. Nov. 11, 2008); *Evans v. Hard Rock Cafe Int'l (USA), Inc.*, No. 07-cv-01074, 2007 WL 2782775, at *4 (E.D. Cal. Sept. 24, 2007); *Greenfield v. Am. W. Airlines, Inc.*, No. 03-cv-05183-MHP, 2004 WL 2600135, at *6-8 (N.D. Cal. Nov. 16, 2004).

1  Costco's challenge to the merits of this claim also fails, for the same reasons discussed above with
2  respect to Lindsey's failure to prevent claim.

3        Costco's motion for summary judgment on Lindsey's third cause of action is DENIED.

## IV.     PUNITIVE DAMAGES

Costco moves for summary judgment on Lindsey's request for punitive damages. Mot. at 24-25. This portion of Costco's motion is GRANTED. Punitive damages generally may be awarded to a plaintiff in a civil action only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Because Costco is a corporate employer, it may only be held liable for punitive damages if Lindsey satisfies the requirements of California Civil Code section 3294(b), which provides that

> [a]n employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

Cal. Civ. Code § 3294; *see also Baird v. Office Depot*, No. 12-cv-06316-EMC, 2014 WL 2527114, at *8 (N.D. Cal. June 4, 2014); *Violan v. On Lok Senior Servs.*, No. 12-cv-05739-WHO, 2013 WL 6907153, at *14 (N.D. Cal. Dec. 31, 2013). The term "managing agent" in this context includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 566-67 (1999). Lindsey contends that Aguilera was a managing agent, but she identifies virtually no evidence to support this conclusion. *See* Oppo. at 22-24 (citing Aguilera Depo. at 37-38, 44-45). In the two portions of Aguilera's deposition she cites, Aguilera states that he was in charge of such tasks as "employees' breaks," "making sure that the front entrance was clean and swept," "check[ing] door counts so we can prepare adequately for the rush," "count[ing] money," and "walking the floor to make sure that everybody was doing their assignments properly." Aguilera Depo. at 37-38, 44-45. I agree with

1  Costco that this evidence would not allow a jury to reasonably conclude that Aguilera was a

2  managing agent.

3  Lindsey's argument that a Costco officer, director, or managing agent authorized or ratified

4  Aguilera's conduct also fails.  Although she asserts that Wikium witnessed some of Aguilera's

5  conduct, there is no indication that Wikium possessed any more independent authority and

6  judgment in his corporate decisionmaking than Aguilera.  Lindsey also relies on the April 2010

7  letter to Costco's CEO, but that letter only references "Sexual Harassment" and other issues in the

8  abstract and includes no specific facts regarding harassment by Aguilera or any other individual.

9  Likewise, Lindsey did not specifically identify Aguilera during her follow-up interview with

10  Human Resources employee Rajski, and Lindsey identifies no evidence indicating that the

11  contents of that interview were ever communicated to an officer, director, or managing agent.

12  Finally, while Lindsey reported the "chopped liver" comment to Warehouse General Manager

13  Mike Reike in 2008, it is undisputed that Aguilera was suspended and issued a disciplinary

14  counseling notice as a result.  Lindsey does not explain how the "chopped liver" comment rises to

15  the level of oppression, fraud, or malice, or how Costco could be held liable for punitive damages

16  based on the comment in light of its response to the incident.[5]

## CONCLUSION

On summary judgment, my job is not to weigh the strength of any party's case but to determine if there is a genuine dispute as to any material fact.  For the foregoing reasons, Costco's motion for summary judgment is GRANTED with respect to Lindsey's request for punitive damages and DENIED with respect to her first, second, and third causes of action.

**IT IS SO ORDERED**.

Dated: August 12, 2016

WILLIAM H. ORRICK
United States District Judge

---

[5] To the extent that Lindsey's request for relief under Federal Rule of Civil Procedure 56(d) is relevant to her request for punitive damages, the request is DENIED.