UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURIE LINDSEY,
    Plaintiff,

    v.

COSTCO WHOLESALE CORPORATION,
    Defendant.

Case No. 15-cv-03006-WHO

**ORDER ON MOTIONS IN LIMINE**

Re: Dkt. Nos. 57, 58

## BACKGROUND

On September 26, 2016, I heard argument on the motions in limine of plaintiff Laurie Lindsey and defendant Costco Wholesale Corporation ("Costco") in this hostile work environment action that asserts claims for harassment and failure to prevent harassment under California's Fair Employment and Housing Act ("FEHA"), and for negligent hiring, supervision, and retention. Lindsay's claims are based on the actions of her former supervisor, Juan Aguilera, whom she alleges subjected her to a course of verbal harassment based on her sex and sexual orientation between 2008 and 2014, culminating in an incident on August 9, 2014, where Aguilera walked up to her and "slammed" into her right side with his right arm and shoulder. After consideration of the memoranda and arguments of counsel, I rule as follows.

**A. Lindsey's Motions *In Limine* (Nos. 1–5)**

**Nos. 1 and 2: To Exclude Or Limit Testimony from Costco's Retained Expert Witness, Dr. Francine Kulick**

Costco's retained expert, Dr. Francine Kulick, conducted a three-hour clinical interview with Lindsey, administered the Minnesota Multi-Phasic Personality Inventory-2 ("MMMPI-2"), reviewed the Caldwell report interpreting the MMMPI-2 test results, studied Lindsey's psychiatric

1    history, and read the depositions of Lindsey and her treating clinicians. Costco Opp. 1. Lindsey
2    moves for an order precluding Costco from offering any testimony from Kulick "because her
3    opinions are inextricably based on, and bound up with, probabilistic interpretations she has no
4    understanding of." Lindsey Mot. 4. Alternatively, Lindsey seeks to limit Kulick's testimony.

5    I agree with Lindsey that Dr. Kulick may not rely on the Caldwell report. It contains a
6    number of "statistical hypotheses" and unfounded conclusions. Although Kulick is trained to
7    manually calculate MMPI-2 scores (Kulick Decl. ¶ 9), she understands little about the Caldwell
8    report's computerized scoring and resulting narrative reporting. Kulick Depo. 115–118. Because
9    of her rote reliance on a report whose basis she does not understand, its conclusions (that she
10   incorporated almost wholesale into her report) cannot be tested on cross-examination, and it is not
11   a proper basis for her testimony.

12   The Caldwell report only comprises one of the bases of Dr. Kulick's opinion as articulated
13   in her expert report, and it is not inextricably woven into her opinions. For that reason, I will not
14   preclude her from testifying. However, there are additional parts of her opinion that I will strike.

15   In the opinion section of her report, Kulick concluded that: (1) Lindsey suffers from
16   Persistent Depressive Disorder; (2) Lindsey suffers from PTSD due to childhood abuse from her
17   father, exacerbated in 2011 by a traumatic assault by a San Francisco security guard; and (3) she
18   disagreed with a treating professional of Lindsey's, Ms. Auerbach, regarding the cause of
19   Lindsey's PTSD. Kulick further found that the "psychological testing does indicate the potential
20   for this individual to be manipulative in the context of any legal action. That would certainly be
21   consistent with Ms. Lindsey's efforts to misrepresent her history during the clinical interview in
22   my office." Kulick Decl. Ex. B p.11 (Dkt. No. 66-1).

23   Considering the information on which she bases her opinions, there are not sufficient facts
24   or data for Kulick to conclude that childhood abuse by Lindsey's father caused PTSD, or that
25   Lindsey is manipulative or lacks credibility in the context of this case. Fed. R. Evid. 702(b).
26   Those opinions are improper and will be struck. Kulick may testify regarding inconsistencies
27   between Lindsey's responses during the clinical interview and her documented medical history,
28   but she may not characterize them or opine on Lindsey's credibility, including conclusions that

she "may have acted manipulatively during the examination process." Kulick Decl. ¶ 13. Lindsey can probe the reliability of this testimony during trial through cross-examination or presentation of rebuttal witnesses. The jury will form its own conclusion on Lindsey's credibility.

Kulick may also testify about the instances of alleged abuse documented in Lindsey's medical records because they form the basis of her opinion. Lindsey's concerns regarding the context or reliability of Ms. Hall's notes can be addressed during examination of the witnesses. The danger that the jury may assign undue weight to a finding of abuse is not unfairly prejudicial, given that the substantiating notes are from Lindsey's consultations with a treating clinician. And given the probative value of the evidence, it is not *substantially* outweighed by the danger of unfair prejudice or wasting time.

**No. 3: To Preclude Evidence and Argument Regarding Alleged Mental Illnesses Affecting Ms. Lindsey's Family Members**

Stipulated. Costco will instruct Dr. Kulick not to divulge specifics about Ms. Lindsey's family's mental health. Motion GRANTED.

**No. 4: To Exclude Any Reference to Statutory Attorney Fees**

Stipulated. Motion GRANTED.

**No. 5: To Preclude Witnesses from the Courtroom Until After Testifying**

Stipulated. Motion GRANTED.

**B. Costco's Motions *In Limine* (No. 1–7)**

**No. 1: To Exclude Evidence of Alleged Harassment by Individuals Other Than Juan Aguilera**

I have already ruled that Lindsey cannot rely on evidence concerning alleged harassment by individuals other than Aguilera to support her hostile work environment claim. *See* Order Denying Defendant's Mot. for Summary Judgment 11 (Dkt. No. 48). Costco cites that Order to support its contention that Lindsey should not be allowed to present any evidence of harassment by individuals other than Aguilera. Mot. 1. Lindsey responds that the Order simply precluded her from using this evidence to show a genuine dispute on a material fact as to the severe and pervasive element—not for other relevant reasons, such as informing her subjective perspective,

3

contributing to her negligent supervision and retention claim, responding to Costco's avoidable consequences defense, and proving the proximate cause element in support of her claim to recover lost wages. See Opp. 2-5.

I agree with Costco that evidence of Lindsey's interactions with Costco's members are irrelevant, would waste time and will be excluded, as will Rodriguez's comment in 2010 because it is not related to Aguilera's conduct, is remote in time, and whatever probative value it has is outweighed by its prejudicial effect. Fed. R. Evid. 403. However, the comments by Doll and Eashman, Costco supervisors, may be admissible for a limited purpose to rebut Costco's defenses and support Lindsey's theory of proximate cause for termination-related damages, as described in the ruling below.

**Nos. 2 and 3: To Exclude Evidence Regarding Plaintiff's 2015 Transfer Requests and Constructive Discharge and Termination-related Damages**

Costco argues evidence related to Lindsey's 2015 transfer requests is not relevant because the requests post-date the filing of this lawsuit. Costco anticipates that Lindsey will argue that the denials were retaliatory, even though she has not pleaded a retaliation claim. In that vein, Costco argues that this evidence should be excluded under Fed. R. Evid. 403. To the extent that this evidence is admissible, Costco argues that Lindsey should be precluded from suggesting that: (1) positions were in fact available at her desired locations at the time she made the requests; (2) the denials were retaliatory or otherwise wrongful; and (3) that Costco could have or should have transferred her even though positions were not available. It also contends that any alleged economic or emotional distress damages resulting from Lindsey's voluntary resignation should be barred because she has not supplemented her Complaint to add a claim for wrongful constructive discharge. Def. Mot. 6.

Lindsey claims that her transfer requests are probative of the reasonableness of her belief that reporting harassment would have been futile, and would lead to further adverse employment actions. *Id*. at 6. Further, she asserts this evidence relates directly to her damages; only once her requests to transfer were denied was she left with no other option than to leave Costco.

The difficulty here *is* the issue of proximate cause. Lindsey filed her administrative

complaint in November of 2014, and this lawsuit in December 2014. She then worked for another six months before commencing her leave of absence in June 2015, subsequently resigning in December. During the six month period while she worked, Lindsey expressed an interest in transferring (beginning in February), and she alleges harassment by supervisors other than Aguilera (Rick Doll in March, and Willie Eashman in May). This evidence may be probative of proximate cause with respect to the damages she allegedly suffered, specifically with respect to why she quit when she did.

During the Pretrial Conference, Costco expressed concern that applying a proximate cause standard here risks placing an unpublished California Appellate case above established California Supreme Court precedent. *See Terry v. Preovolos*, No. D060904, 2013 WL 51932 (Cal. Ct. App. Jan. 4, 2013). Costco's concerns are twofold. First, Lindsey should not be allowed to seek lost wages for the six months after she took a leave of absence in June 2015, but before she decided to resign in December 2015. And second, the proximate cause standard risks circumventing *Turner*'s reasonableness standard for a constructive discharge claim.

For the first point, Costco concedes that it is "fair game" for Lindsey to argue that she went *on leave* because of Aguilera's conduct, and for her to seek damages up to that point, but once she decided to resign (six months later), she must meet *Turner*'s constructive discharge standard to recover lost wages. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1248 (1994). Costco bases this argument on the *Turner* court's finding that a resignation is either voluntary or coerced, but cannot lie somewhere in between. Costco insists that in the absence of a constructive discharge claim, Lindsey should be limited to recovering damages up to her leave of absence because her subsequent decision to resign six months after taking leave was voluntary, not coerced.

For the second point, Costco argued that applying *Terry*'s proximate cause standard fails to incorporate the objective reasonableness of an employee's decision to resign, thereby circumventing *Turner*'s mandate that an employee seeking to recover lost wages under a constructive discharge theory prove that a reasonable person under the circumstances would have been forced to leave. *See Turner*, 7 Cal. 4th at 1248.

Both of Costco's concerns should be adequately addressed once the jury is properly instructed on proximate cause. For Lindsey to recover damages for lost wages, she must prove that her decision to resign was proximately caused by Aguilera's unlawful sexual harassment under FEHA. In other words, an award of damages depends on Lindsey winning her FEHA claim on the merits, and the FEHA claim requires her to prove that a reasonable woman in her circumstances would have considered the work environment to be hostile or abusive. *See* CACI No. 2521A, Hostile Work Environment—Conduct Directed at Plaintiff—Essential Factual Elements—Employer or Entity Defendant (Gov. Code § 12940(j)).

Lindsey must also prove that the underlying FEHA violation was a factor that a reasonable person would consider to have contributed to her lost wages. *See* CACI 430, Causation: Substantial Factor. The jury will be instructed to consider the totality of the circumstances when deciding Lindsey's underling FEHA claim and the resultant harm. The *Terry* court noted that "[l]ost wages are unlikely to be awarded when it is reasonable, or viable, for a victim of sexual harassment or other discrimination to remain on the job despite that unlawful conduct." *Terry*, 2013 WL 51932, at *8.[1] A properly instructed jury should be able to determine whether Lindsey's decision to resign, six months after taking a leave of absence, was proximately caused by Aguilera's alleged sexual harassment.

In sum, Lindsey may not amend her complaint to add causes of action for retaliation or constructive discharge at this late date. I will allow evidence of her requests to transfer, as well as the Doll and Eashman incidents. If Costco wishes to rely on any documents to support its decision to deny her requests to transfer, it shall produce the witness who will testify regarding this topic, and the related documents, for a deposition limited to this topic for no more than one hour at a time mutually convenient to the parties prior to October 17, 2016.

**No. 4: To Preclude Evidence Regarding the 2010 Multi-Employee Letter**

Costco moves to exclude evidence relating to the April 2010, 21-employee letter based on

---

[1] I recognize that *Terry* is unpublished and has no precedential value. At the same time, on the issue of proximate cause I agree with its reasoning and disagree with Costco that *Turner* precludes it.

grounds that it is not relevant and, if it is, it is unfairly prejudicial because it includes a number of issues that have nothing to do with Lindsey's claims.[2] Costco further argues that the letter is inadmissible hearsay. Lindsey contends the letter is relevant because it has a tendency to prove: (1) that Aguilera's sexual harassment was ongoing and therefore pervasive; (2) that it was both objectively and subjectively offensive; (3) that Costco was made aware that this was a concern that needed to be addressed; and (4) that concerns were not adequately addressed by management. Opp. 12. Lindsey also notes that the letter is not hearsay if used to prove that Costco was on notice, and even if offered for the truth of its contents, it falls under exceptions for present sense impression, then-existing mental, emotional, or physical condition, and recorded recollection.

The letter triggered an investigation. Lindsey signed the letter and was interviewed. She raised the "chopped liver" incident in the interview. At the very least, the letter tends to show Costco's knowledge of the sexual harassment allegations expressed, which is relevant to Costco's asserted defenses, and provides context for Lindsey's interview. As evidence of Costco's notice, the letter is not hearsay. As for Costco's Fed. R. Evid. 403 objection, the letter's 2010 date may diminish its probative value, but not so much that it is substantially outweighed by the risk of unfair prejudice.

**No. 5: To Exclude Evidence and Argument Regarding Discovery Disputes**

Costco seeks to prevent Lindsey from introducing argument or evidence concerning discovery disputes, including accusations that Costco failed to produce: (1) security video of the August 9, 2014 incident between Lindsey and Aguilera; (2) documents relating to Lindsey's 2008 complaint over the "chopped liver" incident; (3) documents relating to the 2010 multi-employee complaint and investigation; and (4) documents relating to the availability of positions in Southern California during 2015. Mot. 12. Lindsey contends that she does not intend to refer to the discovery disputes "per se," but rather the lack of evidence concerning the four items above.

Regarding the video footage, I previously found that "plaintiff's accusations of spoliation and/or nonproduction are based on mischaracterizations of the deposition testimony." Order

---

[2] After the Pretrial Conference, Costco lodged a binder containing the letter, excerpts from Lindsey's depositions and the notes from her interview by the investigator, all of which I read.

Regarding Discovery Disputes (Dkt. No. 43). Given this finding, it is inappropriate for "the jury to decide whether the footage ever existed, and if so, why it was not preserved by Costco." Lindsey's Opp. 15. Since there is a risk of confusing the issues, wasting time, or misleading the jury, I GRANT the motion regarding accusations that Costco failed to produce the security footage of the August 9, 2014 incident.

Also in the Order Regarding Discovery Disputes, I found that Lindsey failed to point to any evidence to support a reasonable inference that documents concerning the 2008 "chopped liver" incident were improperly destroyed or misplaced. Lindsey may ask if there were any written reports made concerning the incident, and Costco can explain why the documents no longer exist. Lindsey may not intimate by innuendo or in any way that Costco improperly destroyed the relevant records.

Given the limitation concerning admission of the 2010 multi-employee complaint, there should be no discussion of discovery disputes concerning it or other related information regarding the 2010 complaint.

I have addressed the documents related to the Southern California positions available in deciding Costco's MIL Nos. 2 and 3.

**No. 6: To Preclude Evidence or References to "Retaliation"**

Costco moves under Fed. R. Evid. 402 and 403 to exclude evidence or argument that Lindsey suffered retaliation for complaining about Aguilera. Costco Mot. 15. Lindsey's opposition is two-fold: first, "there is no bright line rule separating harassment and retaliation in a hostile work environment claim;" and, second, Lindsey's evidence of "retaliation" is necessary to explain to the jury why she did not report more of Aguilera's harassment. Lindsey Opp. 17-18.

Since Lindsey did not plead a retaliation claim, she cannot introduce evidence of or argue "retaliation" to support her sexual harassment hostile work environment claim. Two of the cases cited by Lindsey included retaliation claims. *See Miller v. Dep't of Corr.*, 36 Cal. 4th 446 (2005); *Birschtein v. New United Motor Mfg., Inc.*, 92 Cal. App. 4th 994 (2001). The other case does not even mention retaliation. *See Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397 (1994).

Lindsey can, as I indicated earlier, introduce evidence of specific "responses" to her,

including statements and conduct by Aguilera, the Eashman incident, and the handling of the 2015 transfer requests. This evidence may also be relevant to the elements of Costco's avoidable consequences defense and the proximate cause of termination-related damages, as discussed earlier.

### No. 7: To Preclude Plaintiff's Percipient Experts from Offering Any Opinions Formed Outside the Scope of Their Treatment of Plaintiff

Because Lindsey did not disclose her treating professionals as experts, she is limited to offering their testimony concerning opinions formed during the course of treatment. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). The parties do not disagree on this point. *See* Costco Mot. 17; Lindsey Opp. 19. The disagreement turns on whether or not this limitation precludes Lindsey from offering any testimony from the treating professionals in rebuttal to Dr. Kulick.

Merely disagreeing with an adversary's expert is not enough to transform a treating professional into an expert witness. However, the treating professional must have formed her dissenting opinion during the course of treatment. *See Goodman*, 644 F.3d at 826 (agreeing with the district court that doctors who formed "additional" opinions after reviewing information provided by plaintiff's attorney fell outside the scope of a mere treating physician with regards to the "additional" opinions). The treating professional may not offer opinions developed outside the course of treatment; admissibility will depend on when and on what basis the opinion was formed.

It remains to be seen which treating professional Lindsey will call and what she or he may say. If any opinion was formed *outside the course of treatment*, Lindsey cannot offer it because she disclosed no treating professional as an expert witness.

**IT IS SO ORDERED**.

Dated: October 5, 2016

WILLIAM H. ORRICK
United States District Judge